**UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| In re: | Chapter 11 |
| | Case No. 07 B 03217 |
| | Hon. Eugene R. Wedoff |
| Que T Park, | Hearing Date: December 18, 2007 |
| | Hearing Time: 10:00 a.m. |
| Debtor. | |

**FTC's LIMITED OBJECTION TO TRUSTEE'S MOTION
FOR AN ORDER APPROVING THE SALE OF CERTAIN OF
THE DEBTOR'S ASSETS FREE AND CLEAR OF ALL LIENS,
CLAIMS, INTERESTS, CHARGES, AND ENCUMBRANCES**

The Federal Trade Commission ("Commission" or "FTC"),[1] pursuant to Section 363 of the Bankruptcy Code (the "Code"), 11 U.S.C. § 363, and Rules 6004 and 9014 of the Federal Rules of Bankruptcy Procedure, hereby files its limited objection to the Trustee's November 26, 2007 Motion for an Order (A) Scheduling an Auction, Sale Hearing, and Objection Deadlines; (B) Approving Bidding Procedures; (C) Approving Notice of the Sale Hearing; and (D) Authorizing and Approving the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests, Charges, and Encumbrances (the "Motion").

As set forth more fully below, the Commission objects to the Trustee's Motion with respect to a limited subset of assets out of a concern that the Sale Order would curtail the protections afforded to consumers and the rights accorded to the Commission by the Final Judgment Order (the "Final Judgment Order") entered by Magistrate Judge Morton Denlow on November 13, 2006, in

---

[1] The FTC does not, by this objection or any later appearance, pleading, claim, or suit, waive: (1) the FTC's right to have final orders in noncore matters entered only after *de novo* review by a District Court Judge; (2) the FTC's right to have the District Court withdraw the reference in any matter subject to mandatory or discretionary withdrawal; or (3) any other rights, claims, actions, defenses, setoffs, recoupments, or remedies to which the FTC is or may be entitled, in law or equity, all of which rights, claims, actions, defenses, setoffs, recoupments and remedies the FTC expressly reserves.

*Federal Trade Commission v. QT, Inc., Q-Ray Company, Bio-Metal, Inc., Que Te Park, a.k.a. Andrew Q. Park, and Jung Joo Park*, Case No. 03-C-3578 (the "Enforcement Action"). A copy of the Final Judgment Order is attached as Exhibit A to this Objection. The FTC has proposed to the Purchaser language amending the Sale Order to preserve these protections and rights. The Purchaser is currently considering that proposal.

As set forth more fully below, the FTC's regulatory and enforcement interest in the continued existence and vitality of the injunctive provisions of the Final Judgment Order with respect to a limited set of assets should not be overridden, modified, or extinguished by a sale pursuant to Section 363 of the Code, 11 U.S.C. § 363. Section 363(f), by its very nature, prohibits the sale of these specific assets of the Debtors' free and clear of the FTC's regulatory and enforcement interest, because the FTC does not consent and because its interest that cannot be satisfied through monetary compensation. Because the Final Judgment Order contains conduct prohibitions and attendant compliance provisions in the public interest, these provisions of the Final Judgment Order should remain in full force and effect against the Purchaser as successor and assignee with respect to a specified set of the Debtors' relevant assets.

## I. BACKGROUND

### A. The FTC Enforcement Action

Debtors Que Te Park, QT Inc., and Q-Ray Company (the "Debtors"), along with a related non-debtor company, Bio-Metal, Inc., marketed and sold a personal jewelry product known as the "Q-Ray Bracelet" throughout the United States. In response to complaints from consumers and because of claims made by the companies concerning the benefits of the Q-Ray bracelet, the FTC initiated a non-public investigation of the business practices of Debtors and others. The investigation gave the Commission reason to believe that Debtors and others had violated and were

violating applicable federal laws in the marketing of the Q-Ray bracelet to the detriment of hundreds of thousands of consumers.

Specifically, the investigation revealed that Debtors and others, by disseminating nationwide, over the course of approximately three years, four infomercials and numerous other advertisements, had made false and unsubstantiated representations that: (1) Defendants' product, the Q-Ray bracelet, provides immediate significant or complete relief from various types of pain, including, but not limited to, musculoskeletal pain, sciatic pain, persistent headaches, sinus problems, tendinitis, or injuries; (2) tests prove that the Q-Ray bracelet relieves pain; and (3) the Q-Ray 30-Day Satisfaction Guarantee permits consumers to readily obtain a full refund of the purchase price if they return the Q-Ray bracelet within 30 days.

The FTC brought its Enforcement Action on May 23, 2003, alleging that the Defendants violated 5(a) and 12 of the FTC Act, 15 U.S.C. § 45(a) and § 52, which prohibit unfair or deceptive acts or practices in or affecting commerce and false advertising. The Commission sought a permanent injunction and ancillary equitable relief against the Defendants, including rescission or reformation of contracts, restitution, and the disgorgement of ill-gotten monies, pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b).

On September 8, 2006, after a 7 day bench trial conducted between June 6 and July 11, 2006, the Court issued a Memorandum Opinion and Order finding that the Defendants QT, Inc., Q-Ray Company, Bio-Metal, Inc., and Que Te Park (the "Judgment Defendants")[2] violated Sections 5(a) and 12 of the FTC Act. Thereafter, on November 13, 2006, the District Court entered the Final Judgment Order against the Judgment Defendants. The District Court later modified the Final

---

[2] The Court did not award FTC judgment against Defendant Jung Joo Park.

3

Judgment Order on January 22, 2007 by a Memorandum Opinion. The January 22, 2007 Memorandum Opinion can be found at 448 F. Supp. 2d 908 (N.D. Ill. 2006).

The Final Judgment Order permanently enjoins the Judgment Defendants from engaging in the acts and practices that the FTC alleged were unfair, deceptive and false, and awards monetary relief in favor of the FTC and against the Judgment Defendants, jointly and severally, in an amount up to $87,019,840, plus pre-judgment interest.[3]

### B. Pertinent Provisions of the Final Judgment Order

The Final Judgment Order consists of three parts pertinent to the Trustee's Sale Motion: (1) Conduct Prohibitions - (¶¶ I-IV) prohibiting Debtors from engaging in specified unfair and deceptive business practices relating to the marketing of Debtors' products; (2) Notice Requirements - (¶¶ XV-XVII) obligating Debtors to notify their resellers, affiliates, distributors, managers, and employees of all duties imposed by the Final Judgment Order and obligating Debtors to acknowledge receipt of a copy of the Final Judgment Order, and (3) Recordkeeping and Compliance Provisions - (¶¶ XIII, XVIII-XX) requiring Debtors to keep records pertaining to, *inter alia*, advertising and customer complaints, and permitting the FTC to monitor compliance with the Final Judgment Order.

These provisions are designed to ensure that: (1) consumers are protected from the unfair and deceptive practices alleged in the FTC Enforcement Action; (2) the Debtors and the Debtors' resellers, affiliates, distributors, managers, and employees are aware that they are bound by the

---

[3]The District Court held that this $87,019,840 figure was the upper bound on the amount of potential consumer redress. However, the Court also provided that should redress requests fall below Defendants' net profits on the scheme, Defendants would be required to disgorge those profits. Thus, in the Memorandum Opinion modifying the Final Judgment, the District Court found that Defendants Q-Ray Company and QT, Inc. were jointly and severally liable for disgorgement of a minimum of $15,900,000 plus pre-judgment interest. The pre-judgment interest on this amount is $3,254,138.75.

4

prohibitions and mandates protecting consumers; and (3) records pertinent to advertising, consumer purchases, and changes in company operations are maintained and that the FTC is authorized to monitor and verify them.

To effectuate these provisions in the case of a sale, the Purchaser must be regarded as a successor and assignee of the Debtors and should not take free of the FTC's regulatory and enforcement interest. *See* Final Judgment Order at ¶ 8 (b) (" 'Defendants' means . . . QT Inc., Q-Ray Company . . . and their successors and assigns.")  The FTC's interest is limited because the provisions of the Final Judgment Order are at issue, and these are triggered only by the Purchaser's use of the following assets relevant to the FTC's Enforcement Action:

(1) inventory,

(2) the name QT, Inc.,

(3) all rights and interests in the Omega processing machinery and related technology controlled and used by Que T Park to "ionize" jewelry items,

(4) intellectual property, including copyrights, patents and trademarks in U.S., Canada, and all other available jurisdictions,

(5) advertising and Promotional Materials, and

(6) all internet domain names registered to the Debtors.

 A sale of the above assets free and clear of the FTC's regulatory and enforcement interest would impermissibly interfere with the district court's jurisdiction[4] and render the injunctive provisions of the Final Judgment Order meaningless to the detriment of the consumers the FTC acts to protect.

---

[4] Section 13(b) of the FTC Act vests in the District Court exclusive jurisdiction to enforce violations of the FTC Act.  15 U.S.C. § 53(b).  Additionally, in the Enforcement Action the FTC has named additional defendants that are not debtors and thus not subject to the jurisdiction of this Court.

Because the Final Judgment Order specifically applies to the Debtors and their successors and assigns, and because the FTC's interest in maintaining the conduct prohibitions in full force and effect is not an "interest" extinguishable under Section 363 of the Code, the Purchaser should take this limited set of assets as a successor and assignee of the Debtors for purposes of the Final Judgment Order only.

## II.   ARGUMENT

### A.   A Sale Free and Clear of FTC'S Regulatory Interest Would Result in Harm to the Public and Enable the Purchaser to Benefit from The Debtors' Alleged Wrongdoing.

By this Motion, the Trustee seeks, among other things, an order authorizing the sale of certain of the Debtors' assets to MJH Products, LLC, or a higher bidder, "free and clear of all liens, claims, rights, interests, and encumbrances as provided in the Asset Purchase Agreement (collectively the "Interests")." Motion at p. 17. The Trustee also requests that "the Assets be transferred to the Proposed Purchaser, or to the Successful Bidder(s), free and clear of all Interests (except for the Interests that are assumed) with such Interests to attach to the Proceeds of the sale." *Id*. However, granting the Trustee's requests would permit a sale of the assets free and clear of the FTC's regulatory and enforcement interest and would collaterally attack and moot its injunctive provisions.[5] Entry of such an order would impermissibly impinge upon the District Court's jurisdiction and expose consumers to risks of ongoing harm. If the proposed Purchaser does not adhere to the injunctive provisions of the Final Judgment Order as they apply to the specific set of

---

[5] Consistent with Section 13(b) of the FTC Act, Magistrate Judge Denlow retains jurisdiction over "the enforcement, interpretation, and modification" of the agreed Injunction. *See* Exhibit A at p. 15, ¶ IX.

6

assets set forth in Section I. B. above, the Purchaser would be permitted to perpetuate and benefit from the Debtors' wrongdoing.

As previously explained, the FTC alleged, and the district court found, that the Debtors engaged in a widespread and systematic practice of deceiving consumers with respect to the Q-Ray bracelet. Should the proposed Purchaser market the Q-Ray bracelets as the Debtors' did, the wrongdoing that the FTC specifically brought its enforcement action to curtail is at risk of resuming.

Therefore, a sale free and clear of the FTC's enforcement interest as to such things as inventory, intellectual property, and materials, would impermissibly put consumers at risk of incurring new injuries from the unfair and deceptive practices presently prohibited by the Final Judgment Order. According to the proposed Asset Purchase Agreement, the winning bidder will acquire the Debtors' customer list, and it is possible that the Purchaser may retain some or all of the current employees. Debtors have asserted that a significant portion of the Judgment Defendants' customers are repeat customers.[6] If the Court approves the proposed sale, current employees of the Debtors who are bound by the Final Judgment Order[7] may wrongly be advised or wrongly consider themselves free of its restrictions and mandates when selling the current inventory of bracelets, and engage in deceptive conduct that may harm consumers to the benefit of the proposed purchaser.

---

[6] Defendants' Brief in the appeal of the Final Judgment Order to the 7th Circuit asserts at p. 12 that 55% of purchasers are repeat purchasers.

[7] The terms of the District Court's Final Judgment Order specifically apply to the Debtors and their "officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with [the Debtors] who receive actual notice of this Order by personal service or otherwise." *See* Exhibit A at p. 6, ¶ II, p. 7, ¶ III, and p. 8, ¶ IV. The wording of the Order parallels the wording of Rule 65(d) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 65(d). The Final Judgment Order specifically required the Debtors to provide notice of the Final Judgment Order to its employees, *see* Exhibit A at p. 19, ¶ XV.

The proposed sale of the Debtors' business free and clear of the Final Judgment Order would thwart the FTC's interest in enforcing the law by removing the bar to the resumption of specific marketing practices the FTC has strenuously sought to curb with its law enforcement action. Therefore, applying the provisions of 11 U.S.C. § 363(f), this Court should not permit a sale free and clear of the FTC's interest in the continued enforcement of the injunctive provisions of the Final Judgment Order as to specific Debtors' assets.

**B.    The Trustee Cannot Meet the Conditions for Extinguishing
       The FTC's Law Enforcement Interest Under 11 U.S.C. § 363 (f)**

The FTC's law enforcement interest in enforcing the Final Judgment Order as to a limited set of the Debtor's assets cannot be extinguished because Trustee has not and cannot satisfy the conditions in that section for a sale exempt from such interest. In particular, Section 363(f) permits the Trustee to sell property of the Debtors' estate "free and clear of" an interest in the property only if:

> (1)    applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2)    the holder of such interest consents;
>
> (3)    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4)    such interest is in bona fide dispute; or
>
> (5)    the holder of such interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). In this case, none of the five conditions that would allow a sale "free and clear" of the FTC's purported "interest in such property" pursuant to the Final Judgment Order are met. The FTC will consider each of these conditions in order.

First, as set forth more fully in Section II. A., above, outside of the Debtors' bankruptcy case, the Trustee would not be able to assign and sell the Debtors' business free of the Final Judgment Order, because the "successors and assigns" of the Judgment Defendants are specifically bound by the terms of the Final Judgment Order obtained in the FTC Enforcement Action. Therefore, applicable nonbankruptcy law prohibits the sale of these assets free and clear of the injunctive provisions of the order.

Second, as is evident from this objection, the FTC does not consent to the sale as proposed.

Third, the FTC's interest pursuant to the Injunction is not a lien. Therefore, Section 363(f)(3) does not apply.

Fourth, the Final Judgment Order is not in dispute, but is mandatory and not stayed pending appeal.

Finally, as explained more fully in Section II.C. below, the Commission could not be compelled to accept a satisfaction of a money judgment in lieu of the injunctive relief at issue. The Final Judgment Order prohibits those business activities that the FTC alleges are unlawful and thereby protects consumers from further harm. The relief provided by the Final Judgment Order is injunctive and mandatory in nature and the FTC has a right to performance of the injunctive provisions of the order that cannot be reduced to a money judgment.

C. **The Conduct Prohibitions and Compliance Provisions of the Final Judgment Order Are Not "Interests" Extinguishable under 11 U.S. C. Section 363(f)(5).**

As previously explained, the Final Judgment Order contains conduct prohibitions and attendant compliance provisions, none of which is monetary in nature or otherwise qualifies as a

9

"claim" within the expansive definition found at Section 101(5) of the Code.[8] While the Code does not define "interest," and numerous courts have concluded that the term "interest" extends beyond "liens" as defined in Section 101(37) of the Code, the case law is clear that Section 363(f) cannot be used to sell assets free and clear of all restrictions. *See, e.g., Michigan Employment Sec. Comm'n v. Wolverine Radio Co., Inc. (In re Wolverine Radio Co.),* 930 F.2d 1132, 1146 (6th Cir. 1991), *cert. dismissed*, 503 U.S. 978 (1992) (the debtor's experience rating under the Michigan Employment Security Act, which determines the amount of contributions to the state unemployment fund and by law follows the debtor's assets to a successor corporation, "is not an 'interest' within the meaning of section 363(f), and therefore the debtor's rating survives the sale"); *In re Welker*, 163 B.R. 488, 488 (Bankr. N.D. Tex. 1994) (Section 363(f) did not allow the sale of real property subject to HUD's statutory and regulatory interest arising under an agreement between the debtor and HUD because the Code did not have priority over housing acts); *accord In re Fleishman*, 138 B.R. 641, 647 (Bankr. D. Mass. 1992) (right of first refusal in a deed is in the nature of a contractual agreement that is not an "interest" under Section 363(f)); *In re Independence Village, Inc.*, 52 B.R. 715, 734 (Bankr. E.D. Mich. 1985) (sale of life care facility under Section 363(f) could not extinguish residents' leases or life estates); *Jandel v. Precision Colors, Inc. (In re Jandel)*, 19 B.R. 415, 419-20 (Bankr. S.D. Ohio 1992) (stock restrictions imposed by corporate bylaws are not interests in

---

[8] In addition to the injunctive relief at issue here, the FTC has a significant monetary claim against the Debtors and their estates for, among other things, consumer redress. That the FTC has filed proofs of claim and is seeking monetary damages does not convert the Injunction into a "claim." *See, e.g., Gouveia v. Tazbir*, 37 F.3d 295, 300 (7th Cir.1994) (Section 363(f)(5) was not satisfied notwithstanding that equitable provisions of the injunction for enforcement of restrictive use covenant were coupled with a legal right for damages); *In re 523 E. Fifth St. Housing Pres. Dev. Fund Corp.*, 79 B.R. 568, 576 (Bankr. S.D.N.Y. 1987) (Section 363(f)(5) did not apply where court enforcing restrictive covenant in deed requiring that real property be used for low-income housing could include in any order such provisions as equity required in addition to damages).

property under Section 363).

In determining whether an "interest" can be extinguished by sale under Section 363(f), it is useful to consider the effect on the holder of such "interest." As the court explained in *In re Lady H Coal Co., Inc.*, 199 B.R. 595 (Bankr. S.D. W. Va. 1996), *aff'd*, 99 F.3d 573 (4th Cir. 1996), *cert. denied*, 520 U.S. 1118 (1997), "[t]he well established general rule that sales within a bankruptcy proceeding occur free and clear of any interest is founded upon the principle that good faith purchasers receive clean title to the property and that any claims against the property attach to the proceeds." 199 B.R. at 605. The legislative history confirms that a sale under Section 363(f) is free and clear of an interest if the holder "could be compelled to accept a money satisfaction of the interest in a legal or equitable proceeding. Sale under this subsection is subject to the adequate protection requirement." H.R. Rep. No. 595, 95th Cong., 2d Sess. 345 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6302. "Most often, adequate protection in connection with a sale free and clear of other interests will be to have those interests attach to the proceeds of the sale." S. Rep. No. 989, 95th Cong., 2d Sess. 56 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5842. *See also* 11 U.S.C. § 363(e) (the Court "shall prohibit or condition" the use, sale, or lease of property in which an entity has an interest "as is necessary to provide adequate protection of such interest").

Thus, a sale under Section 363(f) assumes that "interests" can be converted into monetary claims and holders of such interests can then look to proceeds of the sale to satisfy those claims. Consistent with this general rule, the Trustee's Motion specifically provides that the interests of the secured creditors and other interested parties will be adequately protected as required by Sections 361 and 363 of the Bankruptcy Code because their liens, if any, will attach to the proceeds generated to the extent there are sufficient proceeds for such attachment. Motion at p. 17, ¶ 47. The general rule, however, affords no protection to the FTC's interest in the Final Judgment Order conduct

prohibitions and compliance provisions, which are injunctive in nature and that cannot be converted into a monetary claim.  Because the FTC cannot be compelled to accept a money satisfaction in lieu of the injunction, attaching the FTC's regulatory and enforcement rights to the sales proceeds does not provide the FTC adequate protection required by Sections 361 and 363(e) of the Code.  *See Torwico Elecs., Inc., v. New Jersey Dep't of Envtl. Protection (In re Torwico Elecs., Inc.)*, 8 F.3d 146, 150-51 (3d Cir.1993), *cert. denied*, 511 U.S. 1046 (1994) (debtor's obligation to clean up hazardous waste on property was not a "claim" under the Code because the state had the right to force the debtor to comply with existing environmental laws pursuant to its inherent police and regulatory powers).  *Accord Gouveia v. Tazbir*, 37 F.3d 295, 299-300 (7th Cir.1994) (because restrictive use covenant could be enforced by proceeding at law or in equity, neighbors could not be forced to accept money damages in lieu of equitable relief and Section 363(f)(5) is not met).  Therefore, the rationale that ordinarily supports a sale "free and clear" under Section 363(f) does not apply to regulatory and law enforcement interests.

The case of *In re Welker*, 163 B.R. 488 (Bankr. N.D. Tex. 1984), is on point and stands for the proposition that a restriction on a debtor's property that is a function of a legitimate government or regulatory interest reflected in the law is not extinguishable by a Section 363 sale.  In *Welker*, the court prohibited the sale of an apartment building "free and clear" of the U.S. Department of Housing and Urban Development's  ("HUD") statutory and regulatory right to approve the buyer or approve removal of the property from the low income housing project.  The court found that, "[t]he Bankruptcy Code does not authorize the court to employ § 363 to supersede or preempt this Congressional requirement or the public policy interests behind the housing acts." 163 B.R. at 488.

The FTC's interest in the continued enforcement of the injunctive relief provisions of the Final Judgment Order is analogous to HUD's property oversight interest in *Welker*.  The FTC's

Congressionally mandated mission is to enforce the FTC Act. Pursuant to Section 5(a)(2) of the FTC Act, the FTC is *"empowered and directed* to prevent persons, partnerships, or corporations . . . from using . . . unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45(a)(2) (emphasis added). Congress explicitly gave the FTC authority to seek injunctive relief in District Court against violations of the statutes it enforces, when the FTC "has reason to believe" that an injunction "would be *in the interest of the public*." Section 13(b) of the FTC Act, 15 U.S.C. § 53(b) (emphasis added).[9] This grant of authority was "designed to enable the Commission to carry out its mandate to protect the public interest through prompt and aggressive enforcement of the laws it administers." 119 Cong. Rec. 21435, 21443 (93d Cong., 1st Sess. June 26, 1973) (Remarks of Sen. Henry M. Jackson). It is this statutory framework that is governs the FTC's ability to seek, obtain, and enforce the Final Judgment Order obtained in the Enforcement Action.

In *Welker*, the court held that Section 363(f) did not allow a sale free and clear of HUD's rights under its statutes and regulations to act to protect the greater public interest in preserving low income housing, notwithstanding that such rights effectively restricted the debtor's ability to transfer its property.[10] Similarly, Section 363(f) does not allow a sale free and clear of the FTC's ability to enforce applicable federal consumer protection statutes in the public interest and ensure that consumers, including the Debtors' customers who may seek to purchase Q-Ray bracelets from the

---

[9] Section 12 (a) also makes it "unlawful for any person, partnership, or corporation to disseminate . . . any false advertisement . . . which is likely to induce . . . the purchase of . . . devices. . . ." 15 U.S.C. § 52(a). The Enforcement Action also enforced this provision.

[10] The mere fact that the imposition and continuation of a governmental entity's regulatory right may devalue the asset does not mean such restriction constitutes an "interest" pursuant to § 363(f). For example, in *Wolverine Radio Co.*, 930 F.2d at 1148, the Sixth Circuit found that the debtor's unemployment experience rating followed the assets of the debtor corporation, even though the result might be a financial burden on the purchaser.

inventory acquired by the proposed purchaser, are not harmed in the future. Such a result is consistent with the *Welker* court's opinion and Congress' stated intent to "prevent the bankruptcy court from becoming a haven for wrongdoers." *Commodity Futures Trading Comm'n v. Co Petro Mktg. Group,* 700 F.2d 1279, 1283 (9th Cir. 1983) (citations omitted). *See also SEC v. First Fin. Group of Texas*, 645 F.2d 429, 439 (5th Cir. 1981). Given that the injunctive provisions of the Final Judgment Order cannot be converted to a monetary claim against the proceeds of the sale, and that there is a strong public interest in favor of enforcing the Final Judgment Order, this Court should find that the FTC's interest cannot be extinguished under the provisions of 11 U.S.C. § 363 (f).

### III.  CONCLUSION

The pertinent provisions of the Final Judgment Order are aimed at protecting consumers from unfair and deceptive practices in connection with the marketing of the Q-Ray Bracelet, and preserving the FTC's ability to enforce the law in the public interest. Absent acknowledgment in the Sale Order that the Purchaser and its resellers, affiliates, distributors, managers and employees are obliged to refrain from engaging in the practices prohibited by the Final Judgment Order as it pertains to a limited set of Debtor's assets, it is uncertain whether consumers will be treated fairly and without deception as required by the Final Judgment Order.

Therefore, the Commission respectfully requests that the Court enter an order approving the sale free and clear of all interests, except the FTC's regulatory and enforcement interest in enforcing against the Purchaser, as a successor and assignee of the Debtor, the Final Judgment Order (except as to Paragraphs V-XII and XIV(containing monetary relief provisions against the Debtors)) with

respect to the limited set of assets described in Section II. B., p. 5, of the above objection.[11]


Dated:  December 13, 2007                                    Respectfully submitted,


| | |
|---|---|
| LOCAL COUNSEL | */s/ Anne M. McCormick* |
| Steven M. Wernikoff | Edward G. Glennon |
| FEDERAL TRADE COMMSSION | Anne M. McCormick |
| 55 West Monroe Street, Suite 1825 | FEDERAL TRADE COMMISSION |
| Chicago, IL 60603-50001 | 600 Pennsylvania Ave., NW, NJ-2122 |
| Telephone: (312) 960-5630 | Washington, D.C. 20002 |
| Fax: (312) 960-5600 | Telephone: (202) 326- 3126, 326-3583 |
| swernikoff@ftc.gov | Fax:  (202) 326-2558 |
| | eglennon@ftc.gov; amccormick@ftc.gov |

---

[11] If the Court overrules the FTC's objection and waives the 10 day stay set forth in Bankruptcy Rule 6004(g), the FTC will be irreparably harmed.  Therefore in the event the objection is overruled, the FTC respectfully requests that the sale order be stayed for 10 days.

## CERTIFICATE OF SERVICE

    I, Anne M. McCormick, certify that I caused a copy the foregoing **FTC's Limited Objection To Trustee's Motion For An Order Approving the Sale of Certain of the Debtor's Assets Free and Clear of All Lien's Claims, Interests, Charges, and Encumbrances** to be served upon the attached Service List, by the method indicated, on December 13, 2007.

                                                                     */s/ Anne M. McCormick*
                                                                     Anne M. McCormick

## SERVICE LIST

**Parties Served Via the Court's Electronic Notice for Registrants:**

Catherine L Steege
Andrew J. Olenik
JENNER & BLOCK LLP
350 North Wabash Avenue
Chicago, Illinois 60611
Tel: (312) 923-2952
Fax: (312) 840-7532
E-mail: csteege@jenner.com

R. Scott Alsterda
Ross E. Kimarovsky
Alex Pirogovsky
Ungaretti & Harris, LLP
3500 National Plaza
70 W. Madison
Chicago, IL 60602
Tel: (312) 474-7900
Fax: (312) 474-7898
E-mail: rsalterda@uhlaw.com

Lester A. Ottenheimer, III
Ottenheimer Teplinsky & Rosenbloom, LLC
750 Lake Cook Road, Suite 140
Buffalo Grove, IL 60090
Tel: (847) 520-9400
Fax: (847) 520-9411
E-mail: lottenheimer@otrlaw.com

Peter A. Siddiqui
Katten, Muchin Rosenman LLP
525 West Monroe Street
Chicago, IL 60661
Tel: (312) 902-5455
E-Mail: peter.siddiqui@kattenlaw.com

Wendy Epstein
Chad J. Husnick
Kirkland & Ellis LLP
200 East Randoph Drive
Chicago, IL 60601
Tel: (312) 861-2000
Fax: (312) 861-220
Email: chusnick@kirkland.com

William T. Neary
Cameron M. Gulden
Office of the U. S. Trustee
227 West Monroe Street, Suite 3350
Chicago, IL 60606
Tel: (312) 886-5785
E-Mail: USTPRegion11.WS.ECF@usdoj.gov

L. Judson Todhunter
DeFrees & Fiske LLC
200 S. Michigan Ave.
Chicago, IL 60604
Tel: (312) 372-4000
Fax: (312) 939-5617
Email: LJT@defrees.com

**Via Overnight Mail**

Que T. Park
510 Alexander Court
Barrington, IL 60010

Bruce L. Wald
Jeffrey B. Rose
Tishler & Wald, Ltd.
200 South Wacker Drive, Suite 3000
Chicago, IL 60606
Tel: (312) 876-3800
Fax: (312) 876-3816
E-mail: jrose@tishlerandwald.com

Ross O. Silverman
Katten, Muchin, Rosenman LLP
525 West Monroe Street
Chicago, IL 60601-3693
Tel: (312) 902-5200
Fax: (312) 902-1061
E-Mail: ross.silverman@kattenlaw.com

**Via First Class Mail**

Jack. J. Carriglio
Don R. Sampen
Clark M. Stalker
Meckler, Bulger & Tilson, LLP
123 No. Wacker drive, Suite 1800
Chicago, IL 60606
Tel: (312) 474-7900
Fax: (312) 474-7898

Bio-Ray, S.A.
c/o Pedro Miguel Marques, 9-1°-B
07181 - Palmanova (Mallorca) Baleares
SPAIN
Tel: 34 971 682 712
Fax: 34 971 682 950

IRS/Insolvency Group
230 Dearborn Street
Chicago, IL 60604
Fax: (312) 566-2825

Illinois Department of Revenue
Collection Division
101 West Jefferson
P.O. Box 19035
Springfield, IL 62702
Fax: (217) 524-0526

Paymentech
4 Northeastern Blvd.
Salem, N.H. 03079
Fax: (603) 896-9713

MB Financial
Attn: Joy Park
6401 N. Lincoln Ave.
Lincolnwood, IL 60712
Fax: (847) 676-5237

Q & T, LLC
Q-Ray Co.
QT, Inc.
OT, Inc. 401(k) Profit Sharing P & T
500 West Algonquin Rd.
Mount Prospect, IL 60056
Tel: (847) 228-1180
Fax: (847) 228-5195